**Ruth C. HELFAND; Mark Seidenberg, as Attorney-in-fact for Ruth C. Helfand, real party in interest, Plaintiffs–Appellants,**

v.

**Mervyn GERSON; an individual; Gerson, Grekin and Wynhoff, a professional law corporation, Defendants–Appellees.**

Nos. 94–16772, 95–15672.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 20, 1996.

Decided Jan. 28, 1997.

James V. Lacy, Laguna Niguel, California, for plaintiffs-appellants.

John S. Nishimoto, Ayabe, Chong, Nishimoto, Sia & Nakamura, Honolulu, Hawai'i, for defendants-appellees.

Before BEEZER and THOMPSON, Circuit Judges; and GONZALEZ, District Judge.*

DAVID R. THOMPSON, Circuit Judge:

## I. OVERVIEW

The widow and nephew of the late William Helfand brought a diversity action alleging legal malpractice against the attorney and law firm responsible for preparing Mr. Helfand's testamentary documents. The district court held the plaintiffs were judicially estopped from asserting their interpretation of Mr. Helfand's testamentary documents because they had successfully advocated an inconsistent position in state court. The district court granted summary judgment for the defendants. On appeal, the plaintiffs contend the district court erred by applying judicial estoppel. They also contend the district court erred by awarding attorney fees under Hawaii Revised Statutes § 607–14 because the complaint was not "in the nature of assumpsit." We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## II. FACTS

Defendant Mervyn S. Gerson, a partner in the defendant law firm Gerson, Grekin and Wynhoff (collectively, the "defendants"), prepared a will for William T. Helfand, which Mr. Helfand executed on October 9, 1991. The will contained the following paragraph 2(b) regarding Mr. Helfand's residence in Hawaii:

> I give, devise and bequeath all my right, title and interest in and to Apartment # 1302, the Waikiki Shores, 2161 Kalia Road, Honolulu, Hawaii, together with all furniture and furnishings customarily situated therein, to my wife, RUTH C. HELFAND, if she survives me.

Thus, under the will, Ruth Helfand was to take Mr. Helfand's interest in the residence if she survived him.

Mr. Gerson also prepared a revocable living trust, which Mr. Helfand executed the same day he executed his will. The trust contained the following paragraph 3.13 regarding Mr. Helfand's principal residence:

> In the event that after the Settlor's death the Trustee holds an interest in property constituting the Settlor's principal· residence at the Settlor's death, the Trustee shall not dispose of such interest so long as the Settlor's spouse desires to continue to live in said property as a principal residence, and the Trustee shall pay its proportionate share of the costs of maintaining said property and shall allow Settlor's

---

* The Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California, sitting by designation.

surviving spouse to continue to reside therein free of all charges.

Paragraph 2.2(B) of the trust provided:

If the Settlor's will specifically bequeaths or devises any property which at the time of the Settlor's death is held in or receivable by the trust (and is not in the Settlor's probate estate), the Trustee shall make distribution of such property as provided therein.

On November 1, 1991, the Hawaii residence was conveyed to the trust. That same day, Mr. Helfand executed an amendment to the trust which provided:

If the Settlor's wife, RUTH C. HELFAND, becomes permanently institutionalized, then upon such institutionalization the Trustee shall distribute absolutely and free of the trust the Settlor's principal residence as defined in Paragraph 3.13, presently at 2161 Kalia Road, Apartment 1302, Honolulu, Hawaii, to the Settlor's nephew, MARK J. SEIDENBERG, if he is then living.

Mr. Helfand died on December 8, 1991. A few months later, First Hawaiian Bank, the trustee, filed a Petition for Instructions in Hawaii state court. The Bank explained that paragraph 2(b) of the will and paragraph 2.2(B) of the trust seemed to require the residence to be distributed directly to Mrs. Helfand. On the other hand, paragraph 3.13 of the trust and the amendment to the trust seemed to require that the residence remain in the trust as long as Mrs. Helfand desired to live in it and as long as she was not institutionalized; upon her permanent institutionalization, however, the residence should be distributed to Mark Seidenberg.[1] Although the Bank believed the residence should be distributed outright to Mrs. Helfand, it sought instructions from the court to avoid potential litigation.

Prior to filing a response to the Bank's petition, Seidenberg and Mrs. Helfand attempted to obtain the defendants' records and documents pertaining to Mr. Helfand's will and trust. On June 3, 1992, they served a subpoena duces tecum on the defendants requiring them to produce those documents. By letter, the defendants gave notice that they would not appear or produce the requested documents. They asserted that the documents were protected by the attorney-client privilege. Seidenberg and Mrs. Helfand did not challenge the defendants' claim of privilege.

Seidenberg filed a response to the Bank's petition on behalf of himself and as attorney-in-fact for Mrs. Helfand. The response stated:

Seidenberg takes no position on Petitioner's request for instructions. Seidenberg only requests that, if the Court determines that the property should be delivered to Mrs. Helfand, ... the Court also determine whether the estate or trust of William T. Helfand remains financially responsible for the upkeep and maintenance of the property.

At the July 10th, 1992, hearing on the Bank's petition, attorney Michael Lilly represented Seidenberg. The parties dispute whether Lilly also represented Seidenberg as attorney-in-fact for Mrs. Helfand.

At the hearing, Lilly argued that because Mrs. Helfand had expressed a desire to live in the residence, the Bank should retain it in the trust until Mrs. Helfand's permanent institutionalization, at which point it should be distributed to Seidenberg. On March 23, 1993, the Hawaii state court adopted this position and instructed the Bank to retain the residence in the trust subject to possible distribution to Seidenberg upon Mrs. Helfand's permanent institutionalization.

Several months later, on September 30, 1993, Mrs. Helfand and Seidenberg as her attorney-in-fact (the "plaintiffs"), sued the defendants in federal district court claiming they had been injured by the Bank's retention of the residence in the trust. They argued that the residence should have been distributed directly to Mrs. Helfand and that Mrs. Helfand failed to obtain ownership of the residence due to the flawed preparation of the estate planning documents. The complaint contained four claims: negligence,

---

1. Mrs. Helfand, age 87, is a resident of the John Douglas French Center in Los Alamitos, California, where she is being treated for Alzheimer's Disease.

breach of contract, breach of warranty, and legal malpractice arising from the defendants' preparation of allegedly ambiguous testamentary documents.

On June 15, 1994, the plaintiffs filed a motion for summary adjudication of some of the elements of their claims. The same day, the defendants filed a motion for summary judgment contending, in relevant part, that the plaintiffs' claims were barred by the doctrine of judicial estoppel because they asserted a position with regard to Mr. Helfand's testamentary intent that was inconsistent with the position they successfully asserted before the Hawaii state court.

The district court denied the plaintiffs' motion for summary adjudication and granted the defendants' motion for summary judgment, holding that, the plaintiffs were judicially estopped from asserting the position alleged in their complaint.

The defendants filed a motion for attorney fees and costs on September 15, 1994. The district court granted this motion pursuant to Hawaii Revised Statutes § 607–14 and awarded the defendants $32,706.50 in attorney fees and $8,541.63 in costs.

On appeal, the plaintiffs challenge both the grant of summary judgment and the award of attorney fees.

## III. DISCUSSION

### A. *Judicial Estoppel*

■ "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir.1996). It is an equitable doctrine intended to protect the integrity of the judicial process by preventing a litigant from "playing fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990), (quoting *Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1210 (9th Cir.1988)), *cert. denied*, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991) (internal quotation marks omitted). "[F]ederal law governs the

application of judicial estoppel in federal court." *Rissetto*, 94 F.3d at 603.

■ The plaintiffs contend that the district court should not have applied judicial estoppel because the position they asserted before the district court was not inconsistent with Lilly's prior assertions in the state court proceeding. We disagree.

Although the plaintiffs' *written* response to the Bank's petition for instructions on how to interpret Mr. Helfand's testamentary documents explicitly took no position on the petition, Lilly eschewed this "no position" position at the hearing itself. At the hearing, Lilly urged the Hawaii state court to interpret the trust documents as providing that the trust retain the residence if Mrs. Helfand desired to continue to live in it, subject to possible distribution to Seidenberg upon Mrs. Helfand's permanent institutionalization. Lilly stated that Mrs. Helfand had in fact expressed her desire to live in the residence, and argued that consequently the residence should be retained in the trust until Mrs. Helfand's possible permanent institutionalization.

After taking this position before the Hawaii state court, the plaintiffs asserted in the district court that Mrs. Helfand was injured by retention of the residence in the trust because Mr. Helfand intended the residence to be distributed to her outright. This position is directly contrary to the position Lilly asserted at the state court hearing on Mrs. Helfand's behalf.

The plaintiffs contend that Lilly's statements at the state court hearing are not incompatible with their subsequent position in the district court because Lilly's statements at the state court hearing addressed only Mrs. Helfand's state of mind (her desire to live in the residence), and not Mr. Helfand's intent. We disagree. The purpose of the state court hearing was to obtain instructions to the trustee on how to interpret Mr. Helfand's testamentary intent as expressed in the trust and related documents. The specific issue addressed was whether Mr. Helfand intended the residence to be distributed to Mrs. Helfand clear of the trust or whether he intended it to be retained by the

trust so long as Mrs. Helfand wished to live in it, after which it should be distributed to his nephew, Seidenberg.[2] At the hearing, Lilly, on behalf of the plaintiffs, took the position that Mr. Helfand's testamentary documents provided that the residence should be retained by the trust if Mrs. Helfand wished to live in it, until her permanent institutionalization.[3] Because it was relevant to the disposition of the property, he also stated that Mrs. Helfand had told Seidenberg "that she wants to continue to reside in the residence...." In the district court, the plaintiffs argued that Mr. Helfand intended the residence to be distributed directly to Mrs. Helfand free of the trust and that she was damaged by the trust's retention of the residence. The district court properly found these two positions to be incompatible interpretations of Mr. Helfand's testamentary intent.

The plaintiffs next argue that Lilly did not intend to declare a position in the Hawaii state court proceeding pertaining to Mr. Helfand's intent; rather, he simply sought to prevent an outright sale of the property. We reject this argument. It is the position stated, not the motivation behind the position, that guides our analysis. Regardless of what the plaintiffs feared the trustee might do, their attorney argued at the state court hearing that the Bank should retain the residence in the trust. They are bound by their attorney's assertions. *See Lewandowski v. National R.R. Passenger Corp.*, 882 F.2d 815, 819 (3d Cir.1989); *AFN, Inc. v. Schlott, Inc.*, 798 F.Supp. 219, 224 (D.N.J.1992).

■ The plaintiffs also contend that judicial estoppel should not apply to Lilly's statements because the statements were nothing

more than legal opinions as to how Mr. Helfand's testamentary documents should be interpreted. They contend that judicial estoppel applies only to factual positions, not to opinions or legal conclusions. There is some support for this view. *See Bates v. Cook, Inc.*, 615 F.Supp. 662, 672–73 (M.D.Fla.1984); *United States v. Siegel*, 472 F.Supp. 440, 442 n. 4 (N.D.Ill.1979); *United States v. Certain Land and Interests in Property in Rutherford County*, 225 F.Supp. 338, 341 (M.D.Tenn.1964).

The greater weight of federal authority, however, supports the position that judicial estoppel applies to a party's stated position, regardless of whether it is an expression of intention, a statement of fact, or a legal assertion. *See In re Cassidy*, 892 F.2d 637, 641–42 (7th Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); *Hardwick v. Cuomo*, 891 F.2d 1097, 1105 n. 14 (3d Cir.1989); *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 214–15 (1st Cir.1987); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166–67 (4th Cir.1982); *AFN, Inc.*, 798 F.Supp. at 224. The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal.

■ The plaintiffs next argue that Mrs. Helfand should not be bound by Lilly's statements at the state court proceeding because she was not a party to that proceeding, and Lilly's statements therefore did not represent her views. We disagree. It is undisputed that Seidenberg is Mrs. Helfand's attorney-in-fact with the power to appear in legal proceedings and employ legal counsel on her behalf.[4] The memorandum which

2. The Bank's Petition for Instructions stated:

Because there exists an ambiguity as to the Testator's intent regarding the disposition of the Property, Petitioner respectfully requests instruction as to its proper disposition; specifically, whether to distribute the Property to Ruth C. Helfand outright pursuant to the provisions of the Will and Paragraph 2.2(B) of the Trust Agreement, or to retain the Property in the trust subject to possible distribution to Mr. Helfand's nephew upon the permanent institutionalization of Mrs. Helfand, as is consistent with Paragraph, 3.13 of the Trust Agreement and the Amendment.

3. Lilly stated at the hearing:

Now, in terms of Your Honor making a determination ... as to how to interpret this trust, what I would recommend that the court do is ... [i]f [Mrs. Helfand] expresses a desire to reside at the residence, then the trust has to retain the residence until she is permanently institutionalized.

4. On October 22, 1991, Mrs. Helfand executed a Power of Attorney, appointing Mark Seidenberg as her lawful attorney-in-fact. Included within Seidenberg's powers was the power "[t]o commence, prosecute and enforce, and to defend,

Seidenberg filed in state court in response to the Bank's petition for instructions stated that Seidenberg was proceeding as a beneficiary of the trust and as attorney-in-fact for Mrs. Helfand. It stated:

> Comes now MARK J. SEIDENBERG ("Seidenberg"), beneficiary under the Revocable Living Trust Agreement of William T. Helfand and attorney-in-fact for Mrs. Ruth C. Helfand, and, in response to the Petition for Instructions filed herein, . . . .

During the hearing, Lilly stated that Seidenberg's position on the distribution of the residence was motivated by a concern for Mrs. Helfand's interests, not Seidenberg's own interests. Later, during his deposition, Seidenberg confirmed that he was acting as the attorney-in-fact for Mrs. Helfand at the hearing. We conclude the district court correctly determined that Lilly represented both Seidenberg as beneficiary and Seidenberg as attorney-in-fact for Mrs. Helfand. Mrs. Helfand is bound by the position Lilly asserted at the hearing.

■ Finally, the plaintiffs contend that judicial estoppel should not apply because they did not have full knowledge of the facts at the time of the state court hearing. They argue this was due to the defendants' improper refusal to comply with the subpoena duces tecum. We reject this argument.

■ Judicial estoppel seeks to prevent the deliberate manipulation of the courts; it is inappropriate, therefore, when a party's prior position was based on inadvertence or mistake. *John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 29 (4th Cir.1995); *In re Corey,* 892 F.2d 829, 836 (9th Cir.1989) (citing *Konstantinidis v. Chen,* 626 F.2d 933, 939 (D.C.Cir.1980)), *cert. denied,* 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990).

The defendants' refusal to respond to the plaintiffs' subpoena duces tecum may have left the plaintiffs without complete information. Perhaps if the defendants had produced their files pertaining to Mr. Helfand's testamentary documents, as the subpoena duces tecum required, the plaintiffs would not have asserted the position they did at the state court hearing. The failure to obtain this information, however, was the plaintiffs' fault. They did not challenge the defendants' assertion of the privilege. They did not attempt to force production of the documents. By failing to bring a motion to compel production, the plaintiffs waived their objection to the assertion of the privilege, including their contention that the assertion was made in bad faith. *See* Fed.R.Civ.P. 37(a); William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial,* 11:891 (1996). In this circumstance, the defendants' refusal to furnish the documents does not preclude the application of judicial estoppel.

We hold the district court properly applied the doctrine of judicial estoppel. Lilly took the position at the state court hearing that the residence should be retained in the trust, and the state court adopted this position. At that hearing, Lilly represented Seidenberg both as beneficiary under the trust and as Mrs. Helfand's attorney-in-fact. The position he asserted represented the position of both Seidenberg and Mrs. Helfand. The plaintiffs were properly prevented by the doctrine of judicial estoppel from subsequently arguing in the district court that the residence should have been distributed directly to Mrs. Helfand.

### B. *Attorney Fees*

■ A federal court sitting in diversity applies state law regarding an award of attorney fees. *Price v. Seydel,* 961 F.2d 1470, 1475 (9th Cir.1992). Hawaii state law provides for the award of attorney fees to the prevailing party for actions "in the nature of assumpsit." Haw.Rev.Stat. § 607–14.[5] The

---

answer and oppose all actions, suits and other legal or equitable proceedings" relating to Ruth Helfand's property. Seidenberg also had the power to employ an attorney as necessary.

5. Section 607–14 provides in part:
 In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; . . . .

plaintiffs contend the district court erred by concluding this action was "in the nature of assumpsit" for the purposes of Haw.Rev.Stat. § 607–14 and awarding attorney fees to the defendants. We disagree.

 "The determination of when an action is in the nature of assumpsit should be based on whether the actual factual allegations are such that historically the action would have been brought in assumpsit." *Healy–Tibbitts Constr. Co. v. Hawaiian Independent Refinery, Inc.*, 673 F.2d 284, 286 (9th Cir.1982). Under Hawaii case law, an action in the nature of assumpsit includes "all possible contract claims." *Id.* "Assumpsit is a common law form of action which allows for the recovery of damages for the non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." *Schulz v. Honsador, Inc.*, 67 Haw. 433, 435, 690 P.2d 279, 281 (1984).[6]

 The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought. *Id.* at 436, 690 P.2d at 282. Where there is doubt as to whether an action is in assumpsit or in tort, there is a presumption that the suit is in assumpsit. *Healy–Tibbitts*, 673 F.2d at 286. Further, a plaintiff's prayer for attorney fees is a significant indication that the action is in assumpsit. *Id.*

The plaintiffs deny they asserted a contract claim, and argue their action as a whole is for legal malpractice which, they contend, is an action in tort.

The plaintiffs' complaint alleges four causes of actions: (1) negligence, (2) breach of contract, (3) breach of express and implied warranty; and (4) legal malpractice. The

prayer for relief requests attorney fees and costs.

There is no doubt that the first claim, alleging negligence, is a tort claim. It is equally certain, however, that the second and third claims alleging breach of contract and breach of warranty are in the nature of assumpsit for the purposes of Haw.Rev.Stat. § 607–14. *See S. Utsunomiya Enters., Inc. v. Moomuku Country Club,* 76 Hawai'i 396, 400, 879 P.2d 501, 505 (1994); *Schulz,* 67 Haw. at 436, 690 P.2d at 282 ("An action for breach of warranty clearly is in the nature of assumpsit, inasmuch as a warranty arises from the contractual relationship between buyer and seller, and a breach of warranty constitutes a breach of contract.").

The plaintiffs contend the district court concluded at oral argument that there was no allegation of breach of contract. This is not entirely accurate. The district court concluded only that there was no allegation of a contract between the defendants and *Mrs.* Helfand. The complaint does allege a breach of the contract between the defendants and *Mr.* Helfand. Mrs. Helfand seeks to recover for this breach not as a party to the contract, but as a third-party beneficiary. Thus, the plaintiffs' argument that there is no contract claim in the complaint lacks merit. Counts two and three are both claims in assumpsit.

Count four alleges legal malpractice. Hawaii courts have not addressed the question whether an action for legal malpractice is "in the nature of assumpsit" for the purpose of the attorney fee provision in Haw.Rev.Stat. § 607–14. We must use our best judgment to predict how the Hawaii Supreme Court would decide this issue. *Takahashi v. Loomis Armored Car Serv.,* 625 F.2d 314, 316 (9th Cir.1980).[7]

---

6. The original version of section 607–14 applied to all actions of assumpsit, but after Hawaii adopted modern rules of civil procedure it was no longer necessary to plead specific legal theories, and all forms of action were merged into the "civil action." Accordingly, the statute was amended to provide for attorney fees in all actions "in the nature of assumpsit." *Schulz,* 67 Haw. at 435, 690 P.2d at 281.

7. Other jurisdictions appear to be split on whether a legal malpractice action brought by an in-

tended beneficiary harmed by the flawed preparation of testamentary documents is in the nature of assumpsit or tort. *Compare Lucas v. Hamm,* 56 Cal.2d 583, 591, 364 P.2d 685, 689, 15 Cal. Rptr. 821, 825–26 (1961) (action may be brought either in contract or in tort), *cert. denied,* 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962) with *Guy v. Liederbach,* 501 Pa. 47, 51, 459 A.2d 744, 749 (1983) (action is in the nature of assumpsit).

**538**

The district court decided the issue by relying on a legal malpractice statute of limitations case, *Higa v. Mirikitani,* 55 Haw. 167, 517 P.2d 1 (1973), and concluded that legal malpractice claims sound in the nature of assumpsit under Hawaii law.

In *Higa,* the Hawaii Supreme Court recognized that actions for legal malpractice are "an amalgam of both tort and contract." *Id.* at 172, 517 P.2d at 5. Nevertheless, the court concluded that for the purpose of determining the applicable statute of limitations, an action for legal malpractice should be treated as a contract action. *Id.* at 173, 517 P.2d at 5–6. The court reasoned that "the act of legal malpractice generally arises out of a contractual relationship between the parties, and hence, in pleading at least, may often be made to appear as a breach of contract." *Id.* at 170, 517 P.2d at 4. The court stated:

> In view of the fundamentally consensual quality of the attorney-client relationship, and also the usually intangible nature of any injury resulting therefrom, the application of a contractual statute of limitations for legal malpractice is logically appealing.

*Id.* at 172, 517 P.2d at 5.

The plaintiffs would distinguish *Higa* on the ground that it involved a determination of the applicable statute of limitations, not an award of attorney fees under Haw.Rev.Stat. § 607–14. The plaintiffs fail to explain why this distinction should matter. Indeed, on at least one occasion, the Hawaii Supreme Court has looked to a statute of limitations case for guidance in determining whether the action before it was in assumpsit for attorney fees purposes. *See Schulz,* 67 Haw. at 436, 690 P.2d at 282. Although *Higa* is not directly on point, its reasoning is a compelling indication of how the Hawaii Supreme Court would rule on the attorney fee question before us.

The plaintiffs also seek to distinguish *Higa* because it involved a client suing his own attorney, and thus in that case there was privity of contract between the two parties. In the present case, Mrs. Helfand was a third-party beneficiary to the contract between the defendants and Mr. Helfand. This distinction is irrelevant.

Courts have extended the right to sue for breach of contract to intended third-party beneficiaries. *See, e.g., Dawes v. First Ins. Co. of Hawai'i,* 77 Hawai'i 117, 128 n. 12, 883 P.2d 38, 48 n. 12 (1994) (recognizing non-contracting parties' rights as third-party beneficiaries of an insurance contract); *Hunt v. First Insurance Co. of Hawaii,* 82 Hawai'i 363, 367, 922 P.2d 976, 980 (App.1996) (discussing the rights of third-party beneficiaries). *See also* Restatement (Second) of Contracts § 302 (1979). The defendants' duty to Mrs. Helfand derives from their contract with Mr. Helfand. Mrs. Helfand's status as a third-party beneficiary does not change the nature of her claim from one in assumpsit to one in tort.

Hawaii also looks to the type of damages suffered by a plaintiff and asks whether they are "the kinds of economic losses that would result when the expectations of a party to a contract are frustrated" or whether they are "damages which include physical injuries disability, pain, loss of earnings, medical expenses, and loss of consortium." *Larsen v. Pacesetter Systems, Inc.,* 74 Haw. 1, 52, 837 P.2d 1273, 1298 (1992). The damages alleged here are more closely akin to contract damages than to tort damages because they are economic damages arising out of Mr. Helfand's alleged frustrated expectation that the defendants would accurately convey his testamentary intent through his testamentary documents, as agreed.

The plaintiffs argue that without negligence they would have no legal malpractice claim. This, however, ignores the contract. With no contract between Mr. Helfand and the defendants, which creates the lawyers' duty, the plaintiffs would have no claim.

In sum, Counts two and three are in the nature of assumpsit, and there is good reason to believe the Hawaii Supreme Court would consider Count four "in the nature of assumpsit" as well. The first count of the action sounds in tort, but the plaintiffs requested attorney fees, an indication that the action as a whole is in the nature of assumpsit. *See Healy–Tibbitts,* 673 F.2d at 286.

"When there is doubt as to whether the action is in assumpsit or in tort, there is a presumption that the suit is in assumpsit." *Id.; see also Osorio v. Henry Waterhouse*

*Trust Co.,* 29 Haw. 376, 386 (1926). We resolve any doubt in favor of assumpsit. We conclude the district court did not err by awarding the defendants attorney fees under Haw.Rev.Stat. § 607–14 based on the court's determination that the present action is "in the nature of assumpsit." [8]

The defendants are also entitled to reasonable attorney fees for this appeal. Under Hawaii law, such fees are recoverable. Haw. Rev.Stat. § 607–14. The amount of these fees shall be determined by the district court.

## CONCLUSION

The district court did not err by applying judicial estoppel. Lilly represented both Seidenberg and Mrs. Helfand in the state court proceeding and successfully asserted a position inconsistent with the position they later asserted in the district court. Nor did the district court err in awarding attorney fees to the defendants. The court appropriately determined that the plaintiffs' action was "in the nature of assumpsit" for the purposes of Haw.Rev.Stat. § 607–14. The defendants are also awarded reasonable attorney fees for this appeal, the amount of such fees to be determined by the district court.

AFFIRMED.

---

8. Because we conclude the district court did not err in awarding attorney fees to the defendants under Haw.Rev.Stat. § 607–14, we need not consider the defendants' argument that the fee award was justified under Haw.Rev.Stat. § 607–14.5 because the plaintiffs' claims were frivolous.