T.C. Memo. 2000-185

UNITED STATES TAX COURT


VIRGINIA M. MARTEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent*

DAVID E. AND DONNA P. LANE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 3401-97, 16223-97.        Filed June 26, 2000.


<u>Woodford G. Rowland</u>, for petitioner in docket No. 3401-97.

<u>John E. Cassinat</u>, for petitioners in docket No. 16223-97.

<u>Christian A. Speck</u>, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION

VASQUEZ, <u>Judge</u>:  This case is before the Court on Virginia

M. Marten's (Ms. Marten) motion for further reconsideration

---

*This Supplemental Memorandum Opinion supplements <u>Marten v.
Commissioner</u>, T.C. Memo. 1999-340.

pursuant to Rule 161.[1]

We incorporate herein by this reference the facts found in our prior opinion, <u>Marten v. Commissioner</u>, T.C. Memo. 1999-340 (Marten I), and we reiterate the pertinent facts and find additional facts as necessary.

In 1953, David E. Lane (Mr. Lane) and Ms. Marten married. During their marriage, they had four children. Their youngest child, Niklas, nearly drowned in an accident and became a quadriplegic at age 4. On or about January 16, 1979, Mr. Lane and Ms. Marten legally separated.

On September 1, 1982, Mr. Lane purchased a $750,000 life insurance policy on his own life (the policy). The policy was a whole life policy that began accumulating a cash surrender value in the 16th year. Ms. Marten was the owner and irrevocable beneficiary of the policy, and it was immediately assignable by her.

On March 20, 1984, the Sacramento County Superior Court (the superior court) dissolved the marriage of Mr. Lane and Ms. Marten. In an order issued by the superior court (the support decree), among other things, Mr. Lane was ordered to continue paying the premiums on the policy. On January 27, 1987, the

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

superior court issued a modified decree.  The modified decree required Mr. Lane to continue paying the premiums on the policy as directed in the support decree.

On April 26, 1995, Mr. Lane filed a motion to modify the modified decree.  In a declaration attached to the motion to modify, Mr. Lane asked that he be relieved of the obligation to pay the premiums on the policy.  Mr. Lane claimed that the policy was originally intended to pay for Niklas' health care if Mr. Lane were to predecease Niklas.  Mr. Lane claimed that Niklas' care had been covered by Medicare and MedCal since 1992; therefore, the policy was no longer needed.

On June 19, 1995, Niklas died.  On December 28, 1995, the superior court held a hearing on the motion to modify.  On January 4, 1996, the superior court issued a Statement of Intended Decision (the Intended Decision).  In the Intended Decision, the superior court stated:  "the purpose of the insurance was to provide for Niklas."  The superior court, acknowledging Niklas' death, relieved Mr. Lane of his obligation to pay the premiums on the policy.  On December 26, 1996, the superior court issued a Judgment after Trial confirming the Intended Decision.

On October 12, 1999, this Court issued its Memorandum Findings of Fact and Opinion in Marten I, which concluded that premiums paid by Mr. Lane in 1993 and 1994 on the policy

constituted alimony includable in Ms. Marten's income pursuant to section 71(a)(1), prior to amendment by the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 422(a), 98 Stat. 494, 795 (pre-DEFRA section 71).

On November 5, 1999, Ms. Marten filed a motion for reconsideration of our opinion. On April 20, 2000, we granted the motion for reconsideration to consider whether we had erred in applying pre-DEFRA section 71 as opposed to section 71, after amendment by DEFRA (post-DEFRA section 71). We held that we were correct in applying pre-DEFRA section 71 and upheld our decision in Marten I.

On May 19, 2000, Ms. Marten filed a motion for further reconsideration. In the motion for further reconsideration, Ms. Marten now argues that if pre-DEFRA section 71 applies, she should still prevail based on our holding in Wright v. Commissioner, 62 T.C. 377 (1974), affd. 543 F.2d 593 (7th Cir. 1976). Ms. Marten also reiterates her prior argument that Mr. Lane should be judicially estopped from arguing that the premium payments were not for Niklas' support. On June 7, 2000, Mr. Lane and respondent filed responses thereto.

Reconsideration under Rule 161 permits us to correct manifest errors of law or fact, or to allow newly discovered evidence to be introduced that could not have been introduced before the filing of an opinion, even if the moving party had

exercised due diligence.  See <u>Rothwell Cotton Co. v. Rosenthal &</u> <u>Co.</u>, 827 F.2d 246, 251 (7th Cir. 1987); see also <u>Traum v.</u> <u>Commissioner</u>, 237 F.2d 277, 281 (7th Cir. 1956), affg. T.C. Memo. 1955-127.  The Court will not grant a motion to reconsider unless the party seeking reconsideration shows unusual circumstances or substantial error.  See <u>Alexander v. Commissioner</u>, 95 T.C. 467, 469 (1990); <u>Estate of Halas v. Commissioner</u>, 94 T.C. 570, 574 (1990); <u>Vaughn v. Commissioner</u>, 87 T.C. 164, 166-167 (1986); <u>Estate of Bailly v. Commissioner</u>, 81 T.C. 949, 951 (1983); <u>Haft</u> <u>Trust v. Commissioner</u>, 62 T.C. 145, 147 (1974), affd. on this issue 510 F.2d 43, 45 n.1 (1st Cir. 1975).

From a review of the record and legal authority, we are still convinced that our opinion in Marten I was decided correctly.  For sake of completeness, however, we address our decision in <u>Wright v. Commissioner</u>, <u>supra</u>, and distinguish it. Further, we address Ms. Marten's judicial estoppel argument and conclude that this is not a proper case for the application of the doctrine.

Pre-DEFRA section 71 includes in the gross income of a divorced wife (1) periodic payments (2) received by her (3) in discharge of the husband's legal obligation based on the martial or family relationship (4) incurred under a divorce decree or settlement agreement incident to such decree.  See <u>Brodersen v.</u> <u>Commissioner</u>, 57 T.C. 412, 415-416 (1971).  In Marten I, we held

that the premium payments were periodic payments in discharge of Mr. Lane's legal obligation incurred under the support and modified decrees. We did not specifically address whether Ms. Marten had "received" the payments within the meaning of pre-DEFRA section 71. Ms. Marten now argues that under Wright v. Commissioner, supra, she never actually or constructively received the payments, and the payments are not includable in her gross income as alimony.

Generally, it is not a requirement that the wife actually receive the payments for the amount to be taxable income to her. See Christiansen v. Commissioner, 60 T.C. 456 (1973). It is however necessary that the payments confer on the wife a presently ascertainable economic benefit so as to deem the wife in constructive receipt of the premium payments. See Cosman v. United States, 194 Ct. Cl. 656, 440 F.2d 1017 (1971); Mandel v. Commissioner, 229 F.2d 382 (7th Cir. 1956), affg. 23 T.C. 81 (1954); Emmons v. Commissioner, 36 T.C. 728 (1961), affd. 311 F.2d 223 (6th Cir. 1962).

In pre-DEFRA section 71 cases, generally, we have held that the payee spouse must include in gross income premium payments paid by his/her ex-spouse on a life insurance policy where the payee spouse is named owner and irrevocable beneficiary of the policy. See Hyde v. Commissioner, 36 T.C. 507 (1961), affd. 301 F.2d 279 (2d Cir. 1962); Stewart v. Commissioner, 9 T.C. 195

(1947); Ellis v. Commissioner, T.C. Memo. 1973-152.  However, in cases where the policy is pure term life insurance, we have held that the benefits conferred on the payee spouse through the premium payments were too unascertainable to be taxable to the payee spouse.[2]  See Wright v. Commissioner, supra; Brodersen v. Commissioner, supra.

In Wright v. Commissioner, supra at 385, the husband was required pursuant to the divorce decree to maintain a 10-year renewable term life insurance policy on his own life naming his wife the owner and beneficiary of the policy.  Under the decree, the husband was to maintain the policy until his wife remarried, reached age 65, or died.  See id. at 383-384.

In that case, we held that in determining whether the wife constructively received the premiums paid by her ex-husband "it is necessary to examine what obligations are due her under the policy, as well as whether she is the owner or assignee and irrevocable beneficiary of the policy."  Id. at 397.  We held that the wife under the term life insurance policy had such limited rights that she could not be said to have constructively received an economic benefit from the premium payments.  See id. at 398.  This Court focused on the contingent nature of the

---

[2]  We note that under post-DEFRA section 71 premium payments on both whole and term life insurance policies are includable in the payee spouse's gross income.  See sec. 1.71-1T(b), A-6, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984).

wife's rights in the policy.  She lost her rights to the policy proceeds if she predeceased her husband, attained the age of 65, or remarried.  See id.  We stated that the mere peace of mind afforded the wife by the pure term life insurance did not constitute a taxable economic gain.  See id.

The instant case is distinguishable from Wright.  Wright concerned a pure term life insurance policy with additional restrictions placed on the wife's rights to the policy proceeds.  See Wright v. Commissioner, supra at 398.  In the present case, the policy is a whole life insurance policy.  The policy is captioned "Increasing Premium Whole Life Non-Participating--No Annual Dividends Policy".  The policy began to build up a substantial cash surrender value in the 16th year, and the values accruing each year from the issuance of the policy were guaranteed as long as the premiums were paid.  The policy was immediately assignable by the wife, and she was entitled to the policy proceeds even if she remarried or attained the age of 65.  She was also the owner and irrevocable beneficiary of the policy.  This is not like the situation in Wright where it was more doubtful whether the wife would ever receive an economic benefit from being the owner of the policy.[3]  See id.  Here, looking at the policy in toto, we conclude the wife received presently

---

[3]  In fact, at the time of trial, the policy in question here was in its 17th year and had a cash surrender value of $10,500.

ascertainable economic benefits under the policy in the years at issue; therefore, she constructively received the premium payments.

Ms. Marten also argues in her motion for further reconsideration that Mr. Lane should be judicially estopped from denying that the premium payments were intended for Niklas' health care. Ms. Marten claims that Mr. Lane's present position that the policy was for her support is inconsistent with his prior position before the superior court (which that court accepted) that the policy was to provide for Niklas' care.

The Tax Court, as well as most Federal Courts of Appeals, have accepted the doctrine of judicial estoppel.[4] See Helfand v. Gerson, 105 F.3d 530 (9th Cir. 1997); United States ex rel. Am. Bank v. C.I.T. Constr., Inc., 944 F.2d 253, 257-259 (5th Cir. 1991); McKinnon v. Blue Cross & Blue Shield, 935 F.2d 1187, 1192-1193 (11th Cir. 1991); Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166-1168 (4th Cir. 1982); Huddleston v. Commissioner, 100 T.C. 17, 27-29 (1993). But see Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1520 n.10 (10th Cir. 1991). Judicial estoppel is an equitable doctrine which operates to "prevent parties from taking positions that are inconsistent with

_____

[4] We note that the Court of Appeals for the Ninth Circuit, the court to which this case is appealable, has adopted the doctrine of judicial estoppel. See Helfand v. Gerson, 105 F.3d 530 (9th Cir. 1997); Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

those previously asserted by the parties and accepted by courts and that would result in inappropriate and prejudicial consequences to the courts." Huddleston v. Commissioner, supra at 26. The doctrine focuses on the relationship between a party and the courts, and it is intended to protect the latter. See In re Cassidy, 892 F.2d 637, 641 (7th Cir. 1990). Whether or not to apply the doctrine is within the court's sound discretion. It should be applied with caution in order "to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." Daugherty v. Commissioner, T.C. Memo. 1997-349 (citing Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990)).

We refuse to apply the doctrine of judicial estoppel in the present case. Assuming arguendo that Mr. Lane's position in this proceeding (that the policy was for Ms. Marten's support) is inconsistent with the position he took before the superior court (that the policy was for Niklas' care), there is no resulting inappropriate or prejudicial consequence to this Court by hearing his argument. We stated in Marten I that "it appears that at least part of the premium payments was to ensure Niklas' continued care." We nonetheless concluded that the premium payments were alimony pursuant to pre-DEFRA section 71 and Lester v. Commissioner, 366 U.S. 299 (1961). In Lester v. Commissioner,

<u>supra</u> at 303, the U.S. Supreme Court held that in order for a divorce decree to "fix" an amount as child support under pre-DEFRA section 71, the decree must expressly specify or fix the amount of each payment which is for child support.  The Court held that absent an express allocation, the entire payment is alimony and taxable to the wife.  See <u>Lester v. Commissioner</u>, <u>supra</u>.  Since there was no express allocation in the support decree or modified decree in the present case, the payments would be alimony even if intended to provide solely for Niklas' care.  Therefore, there are no inappropriate or prejudicial consequences to this Court by allowing Mr. Lane to advance his argument.

We deny Ms. Marten's motion for further reconsideration.

<u>An appropriate order</u>

<u>will be issued</u>.