**Kim Fell ANDERSON, Plaintiff–Appellee,**

v.

**Manu MELWANI, Defendant– Appellant.**

**No. 98–16136.**

United States Court of Appeals, Ninth Circuit.

Submitted April 30, 1999.[1]

Decided June 4, 1999.

---

1. The panel unanimously finds this case suitable for decision without oral argument. *See*

Fed. R.App. P. 34(a)(2).

Timothy H. Skinner, Saipan, MP, for the defendant-appellant.

Rexford C. Kosack, Saipan, MP, for the plaintiff-appellee.

Before: FARRIS, NOONAN and GRABER, Circuit Judges.

FARRIS, Circuit Judge:

Manu Melwani appeals the denial of his motion for attorney's fees and his motion for reconsideration. We reverse.

## BACKGROUND

Melwani ran a title insurance company in Guam. In 1990, he decided to launch a sister corporation in the Commonwealth of the Northern Mariana Islands. In January 1991, Melwani recruited Kim Fell Anderson to run the new business, which became known as Pacific American Title Guaranty & Escrow Co. (CNMI). Melwani and Anderson executed an employment agreement in which Melwani made a variety of covenants on behalf of himself and Pacific American Title, and Anderson agreed to manage the office. The agreement also included a non-compete clause and the following provisions: (1) in the event of a dispute, either party could seek arbitration, and (2) in the event of a lawsuit to "enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees."

In June 1997, Anderson was fired. A few months later, she formed her own title insurance company. Melwani believed that Anderson had appropriated Pacific American's title record database for her new business, and he threatened to sue her if she did not return it. On January 5, 1998, Anderson filed this suit against Melwani personally. She sought to compel arbitration of the dispute and to restrain Melwani from suing to enforce the non-

compete clause.[2] A few days later, Pacific American filed suit in the Superior Court of the Northern Mariana Islands to enforce the non-compete clause.

On January 20, 1998, Melwani moved to dismiss the federal suit for failure to join an indispensable party, Pacific American.[3] *See* FED. R. CIV. PROC. 19(b). The court granted the motion. On January 22, 1998, Melwani moved for attorney's fees pursuant to the employment agreement. The court concluded that because the case had been dismissed on procedural grounds, Melwani was not a "prevailing party" under the agreement. Thus, it denied his motion. On April 3, 1998, Melwani filed a motion to reconsider the denial of attorney's fees. The court denied this motion also, and Melwani timely appealed.

## DISCUSSION

■ "In the Commonwealth [of the Northern Mariana Islands], the common law, as expressed in the restatements of the law, or if not so expressed, as generally understood and applied in the United States, applies in the absence of written or customary law." *Ada v. Sadhwani's, Inc.,* 3 N.Mar.I. 303, 307, 1992 WL 397532 (1992). There is no relevant law from the Northern Mariana Islands, nor are any restatements applicable. Thus, we apply generally understood common law.

### I. Was Melwani the Prevailing Party under the Attorney's Fees Provision?

■ Melwani argues that under a "common sense" approach, his procedural victory meets the "prevailing party" standard. He points out that Anderson hauled him into federal court to compel arbitration, yet she failed to achieve that goal. In fact, Melwani engineered a permanent dismissal of the case under FED. R. CIV. PROC. 19(b). Further federal proceedings are impossible, because Pacific American is an indispensable, non-diverse party. Melwani notes that where a plaintiff fails to obtain a judgment on at least some of her claims, the defendant is ordinarily the "prevailing party." *See generally Anderson v. Gold Seal Vineyards,* 81 Wash.2d 863, 505 P.2d 790, 793–94 (1973).

Anderson contends that, in order to be a "prevailing party," a party must win on the merits. She points out that in many of the cases cited by Melwani, the court awarded attorney's fees only after reaching the merits. *See, e.g., Strutz v. McNagny,* 558 N.E.2d 1103, 1110 (Ind.App.1990). Anderson also complains that Melwani relies on cases that award attorney's fees under statutes that are not at issue here. *See, e.g., Wong v. Takeuchi,* 87 Hawai'i 320, 955 P.2d 593, 1998 WL 257428 at *2 (1998) (Hawaii statute does not require the prevailing party to obtain a ruling on the merits of the claim.) She notes that courts have construed other statutes to require success on the merits before fees can be awarded. *See, e.g., Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (to obtain attorney's fees, 42 U.S.C. § 1988 plaintiff must "obtain at least some relief on the merits of his claim.")

Outside the federal civil rights context, most of the cases construing statutory attorney's fees provisions do not require a "prevailing party" to win on the merits. For instance, in *All American Distributing Co. v. Miller Brewing Co.,* 736 F.2d 530, 533 (9th Cir.1984), we refused to require an adjudication on the merits "[i]n the absence of express language in the [attorney's fees] statute requiring" it. As Anderson points out, however, a contractual—not a statutory—attorney's fees provision is at issue here. Thus, the cases construing "prevailing party" in the statu-

---

**2.** Since Melwani was a resident of Guam and Anderson was a resident of the Northern Mariana Islands, the court had diversity jurisdiction under 28 U.S.C. § 1332.

**3.** Anderson could not join Pacific American because it was non-diverse.

tory context are at most persuasive authority.

The parties cite a few cases involving contractual attorney's fees provisions. Most of these cases, however, do not decide whether a party must prevail on the merits of the lawsuit in order to obtain fees. *Loman Dev. Co. v. Daytona Hotel and Motel Suppliers*, 817 F.2d 1533 (11th Cir.1987), upon which Anderson relies, is typical. *Loman* contains the following dictum, which Anderson generalizes into a rule of law: "Loman cannot recover attorney's fees ... until after it prevails on the merits." *Id.* at 1537. In fact, the *Loman* court held that plaintiff could not recover attorney's fees *from certain defendants* because he had obtained full satisfaction of his judgment *from other defendants*. *See id.*

Melwani's cases are more on point. In *Walji v. Candyco, Inc.*, 57 Wash.App. 284, 787 P.2d 946 (1990), the court awarded contractually-based attorney's fees after the plaintiff voluntarily dismissed his suit. It concluded that the defendant had "'prevailed' in the common sense meaning of the word." *Id.* at 948. Other courts have reached the same result in the context of a voluntary dismissal. *See, e.g., Century Construction Corp. v. Koss*, 559 So.2d 611 (Fla.App.1990).

Anderson argues that when a plaintiff voluntarily dismisses his case, he implicitly concedes that it lacks merit. She claims that the award of contractual attorney's fees reflects this concession. In other words, the voluntary dismissal cases effectively involved decisions on the merits. Anderson is mistaken. A plaintiff may voluntarily dismiss his case for a variety of reasons, and in some situations he may refile. Thus, a voluntary dismissal may be a temporary reprieve rather than an outright victory. The award of contractual attorney's fees under these circumstances does not necessarily implicate the merits of the underlying lawsuit. Rather, it reflects the fact that the plaintiff has

dragged the defendant through a costly and ultimately fruitless exercise.

The same rationale is applicable here. This suit was not cognizable in federal court, and Anderson does not now claim that dismissal was inappropriate under FED. R. CIV. PROC. 19(b). Her justifications for suing Melwani individually are irrelevant, because the attorney's fees provision does not contain a good-faith exception. Melwani permanently defeated this lawsuit and is therefore the prevailing party.

## II. Did the court have discretion to deny attorney's fees under the agreement?

Anderson argues that even if Melwani was the prevailing party, the court had discretion to deny attorney's fees. We agree. In *DeBlasio Constr. Inc. v. Mountain States Constr. Co.*, 588 F.2d 259, 263 (9th Cir.1978), we stated that the court could refuse to enforce a contractual attorney's fees provision if an award of fees would be "inequitable and unreasonable." We held that the court did not err in denying fees where both parties were to blame for the dispute. *See id.* Other circuits have adopted the *Mountain States* formulation. *See, e.g., McDonald's Corp. v. Watson*, 69 F.3d 36, 45–46 (5th Cir. 1995); *Loman Dev. Co.*, 817 F.2d at 1537 n. 7; *C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir.1987). The court's discretion is not unlimited. The general rule is that a court "abuses its discretion if it awards contractually-authorized attorney's fees under circumstances that make the award inequitable or unreasonable or fails to award such fees in a situation where inequity will not result." *Watson*, 69 F.3d at 45.

Melwani does not seriously contend that the court lacked discretion to deny his claim for attorney's fees. Instead, he argues that the court abused its discretion in doing so. He observes that it failed to explain how enforcing the attorney's fees

provision here would be "inequitable and unreasonable." Melwani is correct. We remand for the court to determine whether an award of fees is appropriate under the *Mountain States* standard, and, if so, to award reasonable fees.

### III. Did the district court abuse its discretion in denying Melwani's motion to reconsider?

Since we remand on other grounds, we need not decide whether the court abused its discretion in denying Melwani's motion to reconsider.

### CONCLUSION

Melwani successfully defeated the underlying federal lawsuit, and therefore he is a "prevailing party" under the contractual attorney's fees provision. The court failed to examine whether awarding Melwani attorney's fees would be inequitable and unreasonable. We remand for a determination of that issue.

REVERSED AND REMANDED.