229 F.3d 877 (9th Cir. 2000)
 KONA ENTERPRISES, INC., individually and derivatively on behalf of Hanford's, Inc. and Nationwide Industries, Inc.; BALANCED VALUE FUND, TACH ONE, on behalf of Montrose Nationwide Limited Partnership; WAYNE M. ROGERS; and JACK M. ERTINO, Plaintiffs-Appellants,
v.
ESTATE OF BERNICE PAUAHI BISHOP, by and through its trustees, Henry Peters, Myron B. Thompson, District of Hawai'I Oswald K. Stender, Richard S.H. Wong, and Lokelani Lindsey; MATSUO TAKABUKI; WILLIAM S. RICHARDSON; MYRON B. THOMPSON; HENRY H. PETERS; HANFORD'S, INC.; NATIONWIDE ENTERPRISES, INC.; MONTROSE NATIONWIDE LIMITED PARTNERSHIP; SNAP PRODUCTS, INC.; HANFORD'S CREATION, INC.; and JOHN DOES 1-10, Defendants-Appellees.
 No. 99-16295
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted August 2, 2000
Filed October 6, 2000
 
 [Copyrighted Material Omitted]
 Russell S. Walker and Reid W. Lambert, Woodbury & Kesler, P.C., Salt Lake City, Utah, for the plaintiffs-appellants.
 David Schulmeister and Kelly G. LaPorte, Cades Schutte Fleming & Wright, Honolulu, Hawaii, for the defendants-appellees.
 Appeal from the United States District Court for the District of Hawai'i. David A. Ezra, District Judge, Presiding. D.C. No. CV-94-00858 DAE
 Before: Harry Pregerson, Michael Daly Hawkins, and M. Margaret McKeown, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 This case involves an award of attorneys' fees to defendants. Plaintiffs Kona Enterprises, Inc. ("Kona"), Tach One, Balanced Value Fund ("BVF"), Wayne M. Rogers ("Rogers"), and Jack Gertino ("Gertino") (collectively "plaintiffs") appeal the district court's order granting defendants'[1] Fed. R. Civ. P. 54(d) motion for attorneys' fees pursuant to Haw. Rev. Stat. 607-14.[2] Plaintiffs challenge the district court's determinations under Hawai'i law that plaintiffs' entire action is "in the nature of assumpsit, " that Rogers, Gertino, Tach One, and BVF are each "losing parties, " and that defendants are "prevailing parties." Plaintiffs also challenge the district court's decision denying their motion for reconsideration by which plaintiffs raised a choice-of-law issue for the first time.
 
 
 2
 We affirm in part, reverse in part, and remand for further proceedings.
 
 I.
 A. Factual Background
 
 3
 In the underlying diversity action, plaintiffs' Second Amended Complaint[3] filed on September 7, 1995 (the "Complaint") sought $4 million in damages as well as costs, interest, and attorneys' fees based on five causes of action: (1) breach of fiduciary duty; (2) breach of the covenant of good faith and fair dealing; (3) interference with corporate opportunity and economic advantage; (4) interference with corporate governance; and (5) constructive trust. The factual allegations set forth in the Complaint reveal the following:
 
 
 4
 Before 1990, defendants -in particular the Estate of Bernice Pauahi Bishop ("Bishop Estate") and its four individual trustees -joined with plaintiffs BVF, Tach One, Rogers, and Gertino in a series of transactions by which they became joint partners and fellow shareholders in various partnership entities that controlled Kona. Several of the investors -including the defendants and plaintiff Rogers -decided to use Kona as a vehicle to gain control of Hanford's Inc., a seasonal decorations company, and Nationwide Industries, Inc., an automobile products manufacturer (collectively the "Companies"). See Kona Enter., Inc. v. Estate of Bishop, 179 F.3d 767, 770 (9th Cir. 1999). By early 1991, Kona had acquired 100% of the stock in the Companies. This stock constituted Kona's only valuable asset.
 
 
 5
 At the time Kona acquired the Companies' stock, the Companies were obligated to BancBoston on separate commercial loans (collectively the "BancBoston Loans"). Beginning in December 1990, BancBoston communicated its intention to call the loans unless $6.5 million in over-advances made under the BancBoston Loans to the Companies were secured by letters of credit. Thereafter, defendants and Kona entered into a series of transactions and agreements by which the Bishop Estate agreed to provide the letters of credit sought by BancBoston. As consideration for the Bishop Estate's agreement to provide the letters of credit, Kona agreed to pay the Bishop Estate substantial fees, to pledge its stock in the Companies, and to give the Bishop Estate an option to purchase nearly all of Kona's common stock. Once the letters of credit were provided in February 1991, BancBoston agreed to extend the loan repayment periods to April 19, 1991, so that defendants, Kona, or the Companies could obtain long-term refinancing to replace the BancBoston Loans. When refinancing was not secured by April 12, 1991, BancBoston agreed to additional extensions on the Nationwide loan to July 5, 1991 and on the Hanford's loan to December 31, 1991 in exchange for further letters of credit from the Bishop Estate.
 
 
 6
 During this second loan extension period, the plaintiffs obtained a refinancing proposal from Security Pacific Business Credit ("SecPac"). Bishop Estate Trustee and individual defendant Matsuo Takabuki, on behalf of all defendants, told plaintiffs that the Bishop Estate could obtain refinancing on better terms and ordered Kona to reject the SecPac refinancing proposal. No further refinancing efforts were apparently made by anyone. Rather than seeking refinancing as promised, the Bishop Estate purportedly chose to purchase the BancBoston Loans itself in July (Nationwide) and December 1991 (Hanford's).
 
 
 7
 In February 1992, the Bishop Estate told Kona that it intended to take control of the Companies if the loans were not repaid immediately. Between February and May 1992, the Bishop Estate purportedly took control of Kona's cashflow and interfered with Kona's management and operations. In April 1992, the Bishop Estate demanded that the Companies repay the loans. Between July 1991 and May 1992, the Bishop Estate purportedly contacted trade creditors and suppliers of Nationwide and made highly derogatory comments about Nationwide's financial condition and management, which adversely affected Nationwide's business.[4] According to plaintiffs, the Bishop Estate even rejected a third party's offer to buy Nationwide, an offer that would have resolved much of Kona's debt problems.
 
 
 8
 In June 1992, the Bishop Estate foreclosed on the stock in the Companies under Kona's stock pledge agreement -taking Kona's only valuable assets and stripping Kona of shareholder status in the Companies. Over the next year, the Bishop Estate formed two new entities -defendants Snap Products, Inc. and Hanford's Creations, Inc. -to whom it assigned the outstanding BancBoston Loans. In September 1993, Snap Products foreclosed on Nationwide's loan, and Hanford's Creations foreclosed on Hanford's loan, taking all assets of the respective companies.
 
 B. Procedural Background
 
 9
 Defendants responded to plaintiffs' Complaint on January 5, 1995, by filing a motion to dismiss for lack of venue or to transfer to a more convenient forum. The district court denied this motion on February 23, 1995. On April 11, 1995, defendants filed a second motion to dismiss, based primarily on plaintiffs' failure to plead their claims derivatively on behalf of the Companies and on plaintiffs Rogers's and Gertino's lack of standing. On June 16, 1995, the district court ruled that plaintiffs' -including Kona's -claims were strictly derivative of the Companies' claims against defendants. The court also dismissed Rogers's and Gertino's claims with prejudice for lack of standing to sue derivatively on behalf of the Companies because they were shareholders in Kona, not the Companies. In addition, because the district court determined that BVF's and Tach One's claims were not individual, but were derivative of Montrose Nationwide Limited Partnership's ("MNLP") claims, the court granted plaintiffs leave to amend their complaint to name MNLP as a plaintiff and to plead all their claims derivatively.
 
 
 10
 On September 7, 1995, plaintiffs filed their Second Amended Complaint, to which defendants responded with a third motion to dismiss. Defendants' September 18, 1995 motion to dismiss asserted three grounds for dismissal: (1) the district court lacked subject matter jurisdiction because of incomplete diversity; (2) the district court lacked subject matter jurisdiction because of Kona'a lack of standing to bring a derivative action on behalf of the Companies; and (3) Hawai'i's statute of limitations barred all of plaintiffs' claims. On December 11, 1995, the district court denied plaintiffs' request to drop non-diverse parties -Tach One, BVF, and MNLP -and granted defendants' motion to dismiss for incomplete diversity, without ruling on defendants' other grounds for dismissal.[5] Judgment terminating the case was entered on December 20, 1995.
 
 
 11
 Plaintiffs timely appealed. By memorandum disposition, the Ninth Circuit vacated the judgment, reversed the dismissal, and remanded the case for the district court to determine whether Tach One, BVF, and MNLP were "necessary" and "indispensable" parties. Kona Enter., Inc. v. Estate of Bishop, No. 96-15117, 1997 WL 289418, at *2 (9th Cir. May 29, 1997). On remand, the district court determined that they were "necessary" parties. But instead of ruling on their indispensability, the court concluded that it was in the interests of justice to permit Tach One, BVF, and MNLP to be dismissed with prejudice provided they agreed to waive all claims against defendants. They so agreed. Consequently, Tach One, BVF, and MNLP were dismissed from the action with prejudice on February 11, 1998.
 
 
 12
 On March 9, 1998, defendants filed their fourth motion to dismiss based on the two grounds not previously addressed by the district court or by this court in the earlier appeal. Defendants argued that Kona did not have standing to sue derivatively on behalf of the Companies because it was no longer a shareholder in the Companies and was not a shareholder when defendants foreclosed on the Companies' assets. Defendants also argued that plaintiffs' claims were barred by Hawai'i's two-year statute of limitations for torts. On May 21, 1998, without ruling on defendants' statute of limitations claim, the district court granted the defendants' motion to dismiss based on Kona's lack of standing. See Kona Enter. Inc. v. Estate of Bishop, 51 F. Supp. 2d 1048, 1057 (D. Haw. 1998). In so ruling, the court observed that Kona lost its shareholder status in June 1992 when the Bishop Estate foreclosed on Kona's stock pledge agreement and that therefore Kona was not a shareholder when plaintiffs filed their original complaint on November 9, 1994. See id. at 1053. Thus, plaintiffs' remaining claims were dismissed with prejudice for lack of subject matter jurisdiction, and judgment was entered in favor of defendants for the second time on May 28, 1998. See id. On June 4, 1999, a different panel of the Ninth Circuit affirmed the district court's decision on the merits. See Kona Enter., Inc. v. Estate of Bishop, 179 F.3d at 770. Upon the second entry of judgment and while plaintiffs' appeal on the merits was pending, defendants timely moved for attorneys' fees and costs under Fed. R. Civ. P. 54(d). The district court appointed Magistrate Judge Kurren as Special Master to hear defendants' motion. On January 5, 1999, the Special Master issued a report recommending that defendants be awarded fees of $590,660.28 and costs in the amount of $34,696.30, for a total award of $625,356.58. The Special Master further recommended that Kona, BVF, Tach One, Rogers, and Gertino be jointly and severally liable for 50% of the total award, or $312,678.28; that BVF, Tach One, and Kona be jointly and severally liable for 35% of the total award, or $218,874.80; and that Kona be liable for 15% of the total award, or $93,803.49.
 
 
 13
 Plaintiffs objected to the Special Master's findings and recommendations on several grounds. They contended that (1) their claims were not "in the nature of assumpsit " for purposes of attorneys' fees under Haw. Rev. Stat. 607-14; (2) Tach One and BVF should not be held liable for any portion of the attorneys' fees because Tach One and BVF voluntarily dismissed their claims with prejudice and were not therefore "losing parties" within the meaning of Haw. Rev. Stat. 60714; (3) Rogers and Gertino were not third party beneficiaries of the agreements sued upon and should not be held liable for attorneys' fees on this basis; (4) Rogers and Gertino should also not be held liable for any portion of the attorneys' fees because they were minor parties who had been dismissed with prejudice from the action four years before the entire action was dismissed; and (5) the fee award was excessive.
 
 
 14
 The district court rejected plaintiffs' objections in their entirety and adopted the Special Master's findings and recommendations, except for reducing the amount awarded for paralegal fees by $50,000. Hence, the district court ruled that defendants were entitled to fees in the amount of $538,577.28 and costs in the amount of $34,696.30, for a total award of $573,273.58.
 
 
 15
 On April 15, 1999, plaintiffs timely filed a Fed. R. Civ. P. 59(e)[6] motion seeking reconsideration on choice-of-law grounds of the district court's order awarding defendants attorneys' fees. Plaintiffs argued for the first time that the district court erred in awarding attorneys' fees under Hawai'i law because the written agreements referred to in the complaint contain a North Carolina choice-of-law provision and North Carolina law would not permit recovery of attorneys' fees in this case. On May 19, 1999, the district court denied plaintiffs' motion.
 
 
 16
 Plaintiffs timely appeal the district court's order awarding attorneys' fees, the order denying their Rule 59(e) motion, and from all other orders relating to the issue of attorneys' fees. We have jurisdiction to review the district court's final judgment under 28 U.S.C. 1291.
 
 II.
 A. Standards of Review
 
 17
 We review a district court's award of attorneys' fees under state law for abuse of discretion. See 389 Orange St. Partners v. Arnold, 179 F.3d 656, 661 (9th Cir. 1999). We review whether the district court properly interpreted and applied the relevant state statute, however, de novo. See Velarde v. PACE Membership Warehouse, Inc., 105 F.3d 1313, 1318-19 (9th Cir. 1997). We also review a district court's denial of a motion for reconsideration for abuse of discretion. See 389 Orange St. Partners, 179 F.3d at 661.
 
 B. Attorneys' Fees
 
 18
 A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees. See 6 James Wm. Moore et al., Moore's Federal PracticeS 54.78[1] (3d ed. 2000); see also Helfand v. Gerson, 105 F.3d 530, 536 (9th Cir. 1997) (applying Hawai'i law to an award of attorneys' fees). "Hawaii state law provides for the award of attorney fees to the prevailing party for actions `in the nature of assumpsit.' " Id.
 
 
 19
 Specifically, Haw. Rev. Stat. 607-14 provides in part:
 
 
 20
 In all the courts, in all actions in the nature of assumpsit . . . there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable . . . . The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five percent of the judgment . . . [or ] the amount sued for if the defendant obtains judgment.
 
 
 21
 Haw. Rev. Stat. 607-14 (1993).
 
 
 22
 1. "Nature of Assumpsit"
 
 
 23
 It is well settled under Hawai'i law that "an action in the nature of assumpsit includes `all possible contract claims.' " Leslie v. Estate of Tavares, 994 P.2d 1047, 1051 (Haw. 2000) (quoting Healy-Tibbitts Constr. Co. v. Hawaiian Indep. Refinery, Inc., 673 F.2d 284, 286 (9th Cir. 1982)). " `Assumpsit is a common law form of action which allows for the recovery of damages for the non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations.' " Id. (quoting Schulz v. Honsador, Inc., 690 P.2d 279, 281 (Haw. 1984))." `The determination of when an action is in the nature of assumpsit should be based on whether the actual factual allegations are such that historically the action would have been brought in assumpsit.' " Helfand, 105 F.3d at 537 (quoting HealyTibbitts, 673 F.2d at 286). The focus of this analysis is thus on the "substance" of the action, "rather than [on] the formal language employed or the form of the pleadings." Schulz, 690 P.2d at 282 (internal quotation marks and citation omitted). Hence, the mere use of tort language in a complaint does not control the characterization of the action as either in assumpsit or in tort. Instead, "[t]he character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought." Leslie, 994 P.2d at 1052 (citing Schulz, 690 P.2d at 282).
 
 
 24
 Here, the learned district judge ruled that "[p]laintiffs' Complaint constituted an action `in the nature of assumpsit' " and for this reason awarded defendants attorneys' fees for the action as a whole. Kona Enter., Inc. v. Estate of Bishop, No. CV-94-00858 DAE, at 8 (D.C. Haw. Apr. 6, 1999) (mem. order). While noting that plaintiffs had "allege[d] various tort claims" and "also assert[ed] contractual violations," the district court analyzed the nature of plaintiffs' action as a whole and resolved any doubts in favor of finding the suit to be in the nature of assumpsit. Id. at 6-8. In so ruling, the court properly relied on our circuit's interpretation of Hawai'i law set forth in Healy-Tibbitts[7] that: "When there is doubt as to the nature of the suit [under Hawai'i law], the presumption is that it sounds in assumpsit and not in tort." 673 F.2d at 286 (citing Osorio, 29 Haw. at 385); see also Helfand, 105 F.3d at 537 (reaffirming this presumption). Indeed, as the district court correctly noted, under then-prevailing Hawai'i law,"in a suit with mixed claims, . . . the existence of contract claims result[ed] in a finding that the action is in the nature of assumpsit unless those `contract claims are merely decorative . . . and not germane to the genuine dispute being litigated[.]' " Kona, No. CV-94-00858 DAE, at 6 (quoting HealyTibbitts, 673 F.2d at 286) (alteration in original). Here, the district court determined that "[p]laintiffs'`tort' claims necessarily require resolution of [the] underlying contractual issues." Id. For this reason, the court ruled that it was "unable to conclude that [plaintiffs'] `contract claims are merely decorative . . . and not germane to the genuine dispute being litigated.' " Id. at 7 (quoting Healy-Tibbitts, 673 F.2d at 286) (alteration in original). Moreover, because plaintiffs, as "the part[ies] opposing the taxation of fees under[Haw. Rev. Stat.] 607-14," had the burden of showing that all claims alleged are not "in the nature of assumpsit," Schulz, 690 P.2d at 282, the district court applied the Healy-Tibbitts presumption and concluded that plaintiffs had failed to show that the nature of their action as a whole consisted of non-assumpsit claims.
 
 
 25
 But eight months after the district court rendered its decision -while this appeal was pending -the Hawai'i Supreme Court effected a sea change in the law governing the application of Haw. Rev. Stat. 607-14. In TSA Int'l Ltd. v. Shimizu Corp., 990 P.2d 713 (Haw. 1999), the Hawai'i Supreme Court held that:
 
 
 26
 in awarding attorneys' fees in a case involving both assumpsit and non-assumpsit claims, a court must base its award of fees, if practicable, on an apportionment of the fees claimed between assumpsit and non-assumpsit claims.
 
 
 27
 990 P.2d at 734 (emphasis added); see also Shanghai Investments Co., Inc. v. Alteka Co., Ltd., 993 P.2d 516, 536 (Haw. 2000) (stating same). Moreover, the Hawai'i Supreme Court recently stated again that "[w]here there is doubt as to whether an action is in assumpsit or in tort, there is a presumption that the suit is in assumpsit." Leslie, 994 P.2d at 1052 (concluding that "[w]hen the recovery of money damages is not the basis of a claim factually implicating a contract, the action is not `in the nature of assumpsit' ") (citing Healy-Tibbitts, 673 F.2d at 286). TSA and Shanghai Investments also make clear that a court must determine whether each individual claim alleged in a complaint sounds in assumpsit or in tort and apportion fees between the assumpsit and non-assumpsit claims if practicable.
 
 
 28
 Here, plaintiffs plead six claims: (1) breach of fiduciary duty; (2) breach of the covenant of good faith and fair dealing; (3) interference with corporate opportunity and economic advantage; (4) interference with corporate governance; (5) constructive trust; and (6) punitive damages. In connection with claims 1 through 5, plaintiffs sought money damages and attorneys' fees.[8] When the district court awarded fees to the defendants, it did not analyze each of plaintiffs' claims separately and then, if practicable, apportion the fees claimed between the assumpsit and non-assumpsit claims because Hawai'i law as interpreted by our court in Healy-Tibbitts did not require the district court do so at the time it made the award.
 
 
 29
 Moreover, the district court did not have the benefit of the Hawai'i Supreme Court's substantive analysis in TSA concerning whether a claim alleging breach of fiduciary duty was "in the nature of assumpsit" for purposes of an attorneys' fee award under Haw. Rev. Stat. 607-14. Historically, under Hawai'i law, whether a claim alleging a breach of duty is "in the nature of assumpsit" or in tort depends on whether the duties arose from a promise or by operation of law:
 
 
 30
 Black's Law Dictionary states that the term "assumpsit" is a Latin term meaning "[h]e undertook; he promised." The dictionary defines the term in various ways, all of which have some relationship to a promise or engagement. The term "tort" is defined as a "legal wrong committed upon the person or property independent of contract," and the dictionary states that "[t]here must always be a violation of some duty owing to plaintiff, and generally such duty must arise by operation of law and not by mere agreement of the parties."
 
 
 31
 Larsen v. Pacesetter Sys., Inc., 837 P.2d 1273, 1298 (Haw. 1992) (alterations in original).
 
 
 32
 In TSA, the Hawai'i Supreme Court specifically addressed the question whether and in what circumstances a breach of fiduciary duty claim should be characterized "in the nature of assumpsit" or in tort for purposes of attorneys' fees under Haw. Rev. Stat. 607-14. The Court held that a breach of fiduciary duty claim sounds in tort where the duties allegedly breached arise as a matter of law from the fiduciary relationship between partners and not from a contractual agreement. See TSA Int'l Ltd. v. Shimizu Corp. , 990 P.2d 713, 733-34 (Haw. 1999). In TSA, the parties were general partners in a partnership who entered "workout" agreements to resolve the partnership's debts. See id. at 718-19. The plaintiffs argued that their breach of fiduciary duty and fraud claims were "predicated" on these agreements and on defendants' related promises. See id. at 720, 734. But plaintiffs did not seek monetary damages based on the non-performance of either agreement or any promise; nor did they allege the breach of either agreement. See id. at 734. Rather, TSA plaintiffs alleged that their general partner Shimizu had fraudulently induced them to enter into one of the agreements by failing to disclose allegedly material facts. See id. at 727, 734. The Hawai'i Supreme Court held that plaintiffs' action was not "in the nature of assumpsit" under Haw. Rev. Stat. 60714. Instead, the Court concluded that: "The mere fact that TSA's claims relate to a contract between the parties does not render a dispute between the parties an assumpsit action." Id.; see also Leslie, 994 P.2d at 1052 (holding that a claim challenging the validity of a settlement agreement and seeking its rescission in order to revive an underlying tort action "was clearly not `in the nature of assumpsit' "). Conversely, where a party's breach of fiduciary duty claim is based on the nonperformance or breach of contractual obligations and the complaint seeks damages flowing from that non-performance or breach, the claim would sound in assumpsit. See TSA, 990 P.2d at 734; see also Helfand, 105 F.3d at 538 (holding that a claim for legal malpractice is "in the nature of assumpsit" for attorneys' fees purposes under Haw. Rev. Stat.S 607-14 because it primarily "arises out of a contractual relationship between the parties" (quoting Higa v. Mirikitani, 517 P.2d 1, 4 (Haw. 1973)); Schulz, 690 P.2d at 282 (holding that "[a]n action for breach of warranty clearly is in the nature of assumpsit, inasmuch as a warranty arises from the contractual relationship between buyer and seller").
 
 
 33
 "Absent manifest injustice . . . we generally apply the law as it exists when we render our decision." Rubin v. Belo Broad. Corp., 769 F.2d 611, 614 (9th 1985) (citing Bradley v. Richmond Sch. Bd., 416 U.S. 696, 711 (1974)). Indeed, because "we owe deference . . . to state court decisions which alter existing law . . . we will follow appropriate precedent even if it is announced after the district court has ruled." Plyler v. Wheaton, 640 F.2d 1091, 1093 (9th Cir. 1981) (citing Vandenbark v. Owens-Illinois Co., 311 U.S. 538, 543 & n.21 (1941)). Accordingly, in light of the change in Hawai'i law effected by TSA, we must remand this matter to the district court to determine whether each of plaintiffs' claims is "in the nature of assumpsit," and if the court determines that a claim is not in the nature of assumpsit, whether it is "practicable" to apportion the award of attorneys' fees between the assumpsit and non-assumpsit claims.[9]
 
 
 34
 2. Defendants' Status as "Prevailing Parties"
 
 
 35
 Under Hawai'i law, a party may be deemed the "prevailing party" entitled to an award of statutory attorneys' fees under Haw. Rev. Stat. 607-14 without successfully litigating the merits of the party's claim. See Wong v. Takeuchi, 961 P.2d 611, 614 (Haw. 1998) (holding a defendant to be the "prevailing party" within the meaning of Haw. Rev. Stat.S 607-14 even though the plaintiff's action was dismissed on summary judgment on laches or statute of limitations grounds.)
 
 
 36
 "Usually the litigant in whose favor judgment is rendered is the prevailing party. . . . Thus, a dismissal of the action, whether on the merits or not, generally means that defendant is the prevailing party." There is no requirement that the judgment in favor of the prevailing party be a ruling on the merits of the claim.
 
 
 37
 Id. (quoting Wright, Miller & Kane, Federal Practice and Procedure 2667 (2d ed. 1983). Here, the district court dismissed plaintiffs' action with prejudice and entered judgment for the defendants. Therefore, under Wong, the district court correctly deemed defendants to be "prevailing parties."
 
 
 38
 Moreover, the fact that plaintiffs' Complaint was dismissed with prejudice for lack of subject matter jurisdiction did not deprive the district court of jurisdiction to award defendants attorneys' fees under Hawai'i law. Under the law of our circuit, a district court sitting in diversity may award attorneys' fees to the prevailing party under applicable state law, despite a dismissal of the action for lack of subject matter jurisdiction. See, e.g., Anderson v. Melwani, 179 F.3d 763, 765-66 (9th Cir. 1999) (awarding defendant contractual attorneys' fees under the law of the Commonwealth of the Northern Mariana Islands despite the dismissal of plaintiff's action for lack of subject matter jurisdiction arising from the failure to join an indispensable party); MacKay v. Pfeil , 827 F.2d 540, 542 n.3., 545 (9th Cir. 1987) (holding that plaintiff's action should have been dismissed for lack of subject matter jurisdiction under the Rooker-Feldman doctrine, but noting that "the reasons for our holding do nothing to undermine the propriety of the award of attorney's fees" under Alaska law). In a diversity action, if state law entitles a "prevailing party" to attorneys fees for "permanently defeat[ing ] [a] lawsuit," that right is not lost by obtaining judgment on procedural grounds. Anderson, 179 F.3d at 766.
 
 
 39
 Here, plaintiffs filed a diversity action, alleging both direct and derivative claims. The district court dismissed all direct claims against defendants with prejudice. The court then dismissed all individual plaintiffs with prejudice, leaving only Kona. Subsequently, the district court dismissed all remaining claims with prejudice and entered judgment in favor of defendants because Kona lacked standing to sue derivatively on behalf of the Companies. The doctrine of res judicata bars all plaintiffs from re-litigating any of their claims. See Lundburg v. Stinson, 695 P.2d 328, 333-34 (Haw. Ct. App. 1985). Therefore, defendants clearly succeeded in "permanently defeating" all direct claims arising out of this lawsuit and the derivative claims of Kona.[10]
 
 
 40
 3. The Individual Plaintiffs' Status as "Losing Parties"
 
 
 41
 Plaintiffs argue on appeal that the district court erred in deeming individual plaintiffs Rogers, Gertino, Tach One, and BVF to be "losing parties" within the meaning of Haw. Rev. Stat. 607-14. Their arguments are without merit.
 
 
 42
 The district court ruled that each individual plaintiff is jointly and severally liable for defendants' attorneys' fees to the extent that fees were incurred before each plaintiff's dismissal from the action with prejudice. The court so ruled because all plaintiffs joined in asserting all claims against defendants. All plaintiffs were represented by the same attorneys. All plaintiffs sought the same relief. And finally, all claims of all plaintiffs were ultimately dismissed with prejudice, albeit at different times. Thus, the district court found: (1) Kona, BVF, Tach One, Rogers, and Gertino jointly and severally liable for fees incurred from the inception of the litigation until Rogers and Gertino were dropped as parties (deemed 50% of the fees); (2) Kona, BVF, and Tach One jointly and severally liable for fees incurred from the original filing of the Second Amended Complaint until Tach One and BVF were dismissed with prejudice (35% of the fees); and (3) Kona solely liable for the fees incurred thereafter (15% of the fees).[11]Given the unitary nature of this action and its prosecution, the district court clearly did not abuse its discretion in holding all plaintiffs jointly and severally liable for their portion of the full amount of attorneys' fees. See Pekarsky v. Ariyoshi, 575 F. Supp. 673, 677 (D. Haw. 1983) (holding that all plaintiffs may be held jointly and severally liable as losing parties where their claims are unitarily raised and litigated); see also Riddell v. National Democratic Party, 712 F.2d 165, 169 (5th Cir. 1983) (affirming order holding defendants jointly and severally liable in a unitary civil rights action), disapproved on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 718 & n.4 (1987); Karrick v. Edes, 19 F.2d 693, 695 (D.C. Cir. 1927) ("It is familiar law that, where several plaintiffs unite in bringing an action, costs may be taxed against all of them and recovery had against any of them."); Hughes v. Foster Wheeler Co., 932 P.2d 784, 791-92 (Alaska 1997) (same).
 
 
 43
 Moreover, plaintiffs' contention that Tach One and BVF should not be held liable for attorneys' fees because Tach One and BVF voluntarily dismissed their claims against defendants with prejudice in order to survive a dismissal of the entire action for incomplete diversity, although sympathetic, is without merit. Again, Wong unequivocally held that any dismissal that results in judgment is sufficient to support an award of attorneys' fees under Hawai'i law. See 961 P.2d at 614. Our circuit has similarly held that a voluntary dismissal of a diversity action with prejudice is "tantamount to a judgment on the merits" for purposes of attorneys' fees awards. Zenith Ins. Co. v. Breslaw, 108 F.3d 205, 207 (9th Cir. 1997) (quoting Schwarz v. Folloder, 767 F.2d 125, 130 (5th Cir.1985)); All American Distributing Co., Inc. v. Miller Brewing Co., 736 F.2d 530, 532-33 (9th Cir. 1984) (holding that "[i]n the absence of express language in the statute requiring an adjudication on the merits of the underlying damages claims," plaintiff's voluntary dismissal of its diversity action after preliminary injunctive relief was denied is a sufficient basis for awarding attorneys' fees under Arizona law to the defendant). Thus, the district court correctly deemed the individual plaintiffs to be "losing parties" within the meaning of Haw. Rev. 607-14.
 
 
 44
 4. Defendants' Failure to Move for Attorneys' Fees After the First Entry of Judgment
 
 
 45
 Although Rogers and Gertino were correctly deemed "losing parties" for attorneys' fees purposes under Hawai'i law, defendants waived their right to hold Rogers and Gertino liable by failing to file a motion for attorneys' fees after the December 20, 1995 entry of judgment. Under Fed. R. Civ. P. 54(d)(2)(B) and Haw. R. Civ. P. 53.1, incorporating Rule 54(d)(2) by reference, "[u]nless otherwise provided by statute or order of the court, the motion [for attorneys' fees] must be filed and served no later than 14 days after entry of judgment." (Emphasis added.) Rogers and Gertino were dismissed with prejudice on April 11, 1995 eight months before judgment was first entered on December 20, 1995. Although plaintiffs timely appealed, defendants failed to file a Rule 54 motion for attorneys' fees following this entry of judgment. Defendants' only motion for attorneys' fees was filed on June 11, 1998, after judgment was entered in their favor on May 28, 1998, for the second time. If defendants had timely moved for attorneys' fees after each entry of judgment, there would be no question that they would be entitled as "prevailing parties" to an award of fees reasonably incurred during both proceedings. See Wright, Miller & Kane, supra, 2667 (citing Yedlin v. Lewis, 320 F.2d 35, 36 (5th Cir. 1963)). Rule 54 expressly conditions a motion for attorneys' fees on an entry of judgment. See Fed. R. Civ. P. 54(b). Thus, the mere passage of time between the dismissal of a party and the entry of judgment has no bearing on whether the previously dismissed parties should be held liable for their portion of attorneys' fees. But here, defendants did not file any motion for attorneys' fees after the first entry of judgment.
 
 
 46
 Although "the 14-day period is not jurisdictional, the failure to comply [with Rule 54] should be sufficient reason to deny the fee motion, absent some compelling showing of good cause." 10 James Wm. Moore et al., supra 54.151[1]. Defendants offer no explanation for their failure to file a motion for attorneys' fees after the first entry of judgment in 1995. Instead, they contend that we should consider the first judgment "a legal nullity" because it was vacated in accordance with our unpublished decision reversing the district court's initial dismissal of the action for incomplete diversity and remanding the matter for further proceedings. See Kona Enter., Inc., 1997 WL 289418, at *2. Defendants' argument has merit only in hindsight. The first entry of judgment was valid for a year and a half until it was vacated on May 29, 1997. With respect to Rogers's and Gertino's liability for attorneys' fees, the fact that the judgment entered after they were dismissed from the action with prejudice was ultimately vacated cannot excuse defendants' failure to comply with Rule 54.
 
 
 47
 Nevertheless, with respect to Tach One's, BVF's, and Kona's liability for attorneys' fees, defendants' argument is persuasive. "The obligation to pay attorneys' fees under [Haw. Rev. Stat.] 607-14 applies only to `losing parties . . . .' " State ex rel. Bronster v. United States Steel Corp., 919 P.2d 294, 318 (Haw. 1996). The Hawai'i Supreme Court has consistently held that where, as here, an appellate court reverses and vacates a judgment, and remands the case for further proceedings, a party in that action "cannot be considered the `losing party.' " Id. (citing Sapp v. Wong, 609 P.2d 137, 142 (Haw. 1980)). When the first judgment was vacated and the case remanded for further proceedings, plaintiffs Tach One, BVF, and Kona were still parties to the action. Thus, although defendants should have moved for attorneys' fees within 14 days of the first entry of judgment, their failure to do so did not prejudice these plaintiffs. These plaintiffs continued thereafter to litigate their claims against defendants and could not have been considered "losing parties " in 1995.
 
 C. Motion for Reconsideration
 
 48
 Plaintiffs argue on appeal that the district court erred in denying their Rule 59(e) motion for reconsideration. Their argument is without merit.
 
 
 49
 Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." 12 James Wm. Moore et al., supra 59.30[4]. Indeed,"a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." 389 Orange Street Partners, 179 F.3d at 665. A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. See id.
 
 
 50
 The district court correctly determined that this is precisely what happened here. Kona filed a Rule 59(e) motion to argue for the first time that, to the extent their claims are deemed to be "in the nature of assumpsit," their resolution is governed by North Carolina law under the choice-of-law provisions agreed to by the parties. Kona further argued that, because North Carolina law would not provide for recovery of attorneys' fees in this case, the district court erred in awarding attorneys' fees to defendants under Hawai'i law.
 
 
 51
 On appeal, plaintiffs contend that they were justified in raising this issue for the first time by a Rule 59(e) motion because plaintiffs had no reason to question the choice-of-law issue until the district court actually ruled that their claims were "in the nature of assumpsit." Plaintiffs' contention is untenable. The Special Master ruled that plaintiffs' claims were "in the nature of assumpsit" under Hawai'i law on January 5, 1999 -four months before the district court ordered the award of attorneys' fees. Thereafter, plaintiffs had numerous opportunities to argue that defendants' motion for attorneys' fees must be decided under North Carolina law before the district court ruled on that motion. They could have so argued (1) in their memorandum in Support of Objections to Report of Special Master filed on February 1, 1999; (2) in their Reply Memorandum in Support of Objections to Magistrate's Report and Recommendation filed on March 24, 1999; and (3) during the March 29, 1999 hearing before the district court judge concerning their objections to the Special Master's Report. Plaintiffs failed to do so. Instead, they continually argued that their claims were not "in the nature of assumpsit" under Hawai'i Law. Therefore, the district court did not abuse its discretion in denying plaintiffs' motion for reconsideration.
 
 III.
 
 52
 In sum, we (1) reverse the district court's determination that plaintiffs' entire action is "in the nature of assumpsit" and remand for the district court to determine whether each of plaintiffs' claims is "in nature of assumpsit " for purposes of attorneys' fees under Haw. Rev. Stat. 607-14 and, if not, whether it is practicable to apportion an award of attorneys' fees between assumpsit and non-assumpsit claims; (2) affirm the court's determination that defendants are the "prevailing parties" and that plaintiffs Kona, Tach One, and BVF are the "losing parties" in this action; (3) hold that defendants waived their right to hold plaintiffs Rogers and Gertino liable for any portion of attorneys' fees by failing to file any motion for attorneys' fees following the December 20, 1995 entry of judgment and, on this basis, reverse the district court's decision holding Rogers and Gertino liable for a portion of the attorneys' fees; and (4) affirm the district court's denial of plaintiffs' motion for reconsideration.
 
 
 53
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS. EACH PARTY SHALL BEAR ITS OWN COSTS ON APPEAL.
 
 
 
 Notes:
 
 
 [1]
 defendants are: Estate of Bernice Pauahi Bishop, by and through its trustees, Henry H. Peters, Myron B. Thompson, Oswald K. Stender, Richard S.H. Wong, and Lokelani Lindsey, and Matsuo Takabuki, William S. Richardson, Myron B. Thompson, and Henry H. Peters, individually, Hanford's Inc., Nationwide Enterprises, Inc., Montrose Nationwide Limited Partnership, Snap Products, Inc., and Hanford's Creations, Inc.
 
 
 [2]
 The district court also awarded defendants costs under Haw. Rev. Stat. 607-09, which Plaintiffs do not challenge on appeal.
 
 
 [3]
 On May 26, 1992, plaintiffs filed a similar complaint against defendants in a North Carolina state court. Plaintiffs voluntarily dismissed the North Carolina action without prejudice on May 25, 1993 and refiled it in the United States District Court for the District of Utah on May 27, 1993. The Utah suit was dismissed for improper venue on April 5, 1994, and plaintiffs' request for reconsideration was denied on September 14, 1994. Plaintiffs filed the original underlying complaint in this case in the United States District Court for the District of Hawai'i on November 4, 1994.
 
 
 [4]
 Plaintiffs filed their North Carolina complaint in May 1992. The chronology of events suggests that the Bishop Estate's purported efforts to take control of Kona and its demands for repayment of the BancBoston Loans may have prompted plaintiffs to file their original suit. A few weeks after plaintiffs did so, the Bishop Estate foreclosed on the stock in the Companies.
 
 
 [5]
 Although the record is not entirely clear, it appears that when Tach One, BVF, and MNLP were dropped as plaintiffs because of nondiversity, any claim brought derivatively on behalf of MNLP was also dropped.
 
 
 [6]
 Rule 59(e) reads: "Motion to Alter or Amend Judgment. Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed. R. Civ. P. 59(e).
 
 
 [7]
 "The district court, like us, is bound to follow the . . . holdings of the [state] Supreme Court when applying [state ] law." Aceves v. Allstate Ins. Co., 68 F.3d 1160, 1164 (9th Cir. 1995). "When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." Aetna Cas. & Sur. Co. v. Sheft, 989 F.2d 1105, 1108 (9th Cir. 1993). Our decision in Healy-Tibbitts reflected our attempt to predict how the Hawaii Supreme Court would award attorneys' fees under Haw. Rev. Stat. 607-14 in cases involving both assumpsit and non-assumpsit claims. Our interpretation of Hawai'i law remains binding in the Ninth Circuit "in the absence of any subsequent indication from the [Hawai'i ] courts that our interpretation was incorrect." Owen v. United States , 713 F.2d 1461, 1464 (9th Cir. 1983).
 
 
 [8]
 Under Hawai'i law, where money damages are sought, a court:
 looks to the type of damages suffered by a plaintiff and asks whether they are "the kinds of economic losses that would result when the expectations of a party to a contract are frustrated" or whether they are "damages which include physical injuries disability, pain, loss of earnings, medical expenses, and loss of consortium."
 Helfand, 105 F.3d at 538 (quoting Larsen , 837 P.2d at 1298).
 In the present case, plaintiffs sought to recover the value of their investments in the Companies, which were allegedly lost because of defendants' conduct. Such damages "are more closely akin to contract damages than to tort damages because they are economic damages arising out of [plaintiffs'] alleged frustrated expectation that [defendants would perform] as agreed." Id. Moreover, the fact that plaintiffs' also sought attorneys' fees further casts the action "in the nature of assumpsit." See Healy-Tibbitts, 673 F.2d at 286; Osorio v. Henry Waterhouse Trust Co., 29 Haw. 376, 384 (Haw. 1926).
 
 
 [9]
 Earlier in the litigation, plaintiffs opposed defendants' motion to dismiss on statute of limitations grounds. Defendants argued that plaintiffs' entire action was barred by Hawai'i's two-year statute of limitations governing tort claims based on injuries to persons or property. See Haw. Rev. Stat. 657-7. In response, plaintiffs vigorously argued that their claims are not tort-based. Instead, plaintiffs argued that they are contractually based claims and therefore fall under the six-year statute of limitations set forth in Haw. Rev. Stat. 657-1. Section 657-1 governs, inter alia, "[a]ctions for the recovery of any debt founded upon any contract, obligation, or liability" and "[p]ersonal actions of any nature whatsoever not specifically covered by the laws of the State." Haw. Rev. Stat. 657-1.
 Consequently, defendants contend on appeal that plaintiffs should be barred by the doctrine of judicial estoppel from arguing that their claims are tort-based for purposes of attorneys' fees. We are compelled to note that defendants argued just as vigorously in support of their motion to dismiss on statute of limitations grounds that plaintiffs' action is tort-based. The fact that both parties have reversed positions has not escaped us. Nevertheless, given the subtle distinctions between both parties' arguments concerning the applicable statute of limitations and their arguments put forth on appeal, we decline to reach the issue of the applicability of the doctrine of judicial estoppel in this case.
 
 
 [10]
 With respect to the derivative claims brought on behalf of the Companies, the district court did note that, although Kona could never bring this action again on behalf of the Companies, the Companies themselves or the current shareholders in the Companies could do so -although it is unlikely that the Bishop Estate, as the majority shareholder in the Companies, would ever decide to sue itself. The fact that the Companies could theoretically pursue these claims against defendants does not defeat defendants' right to be considered "prevailing parties " for attorneys' fees purposes. Under the Supreme Court's "generous formulation" of the term "prevailing parties," parties "may be considered `prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Farrar v. Hobby, 506 U.S. 103, 109 (1992) (holding that an award of nominal damages to plaintiffs in federal civil rights action is sufficient to be considered prevailing parties for attorneys' fees purposes) (internal quotation omitted).
 
 
 [11]
 The district court adopted the apportionment calculations devised by the Special Master. Under Fed. R. Civ. P. 53(e)(2), the district court was required to do so unless the Special Master's factual findings were "clearly erroneous." Plaintiffs made no such showing.